USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11|30|05

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
UNITED STATES OF AMERICA           :     05 Cr. 752 (SHS)
        -against-             :
                              :     OPINION
MANNY REMIRE,                      :
                 Defendant.   :
----------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

    This opinion addresses the government's decision to charge Manny Remire with a federal criminal offense even though his primary alleged wrongdoing – an attempted street robbery – is quintessentially a state crime. Remire asserts that this Court does not have jurisdiction over the attempted robbery of an individual on a public street. He has moved (1) pursuant to Fed. R. Crim. P. 12(b)(2) to dismiss two counts of the indictment against him; (2) for additional discovery; and (3) for a bill of particulars. The motions have been denied for the reasons set forth below.

    The government alleges that the following events took place: On an afternoon in late June 2005, Remire was sitting in a green minivan on Riverdale Avenue in the Bronx when two pedestrians walked by. (Am. Crim. Compl. ¶ 3). Remire exited the minivan from its side door and approached the pedestrians brandishing a gun. (Id.). In response, the pedestrians tried to flee. (Id.). Remire shouted "stop" and then caught up to one of them in the middle of Riverdale Avenue. (Id. ¶¶ 3-4). Just after the would-be victim put his hands in the air, Remire yelled "shit" and ran back toward the minivan. (Id. ¶ 4). The pedestrian turned around to see a marked police van heading toward him. (Id.). The police exited the van and arrested Remire. (Id. ¶ 6).

    After Remire was arrested, the police learned that he had been convicted of two prior felonies in state court (id. ¶ 8) and accordingly charged Remire pursuant to the federal felon-in-

1

possession-of-a-firearm statute. He does not challenge that aspect of the indictment. In addition, the victim of the attempted robbery reported to the police that he was carrying $2,000 and that he intended to "use this money to purchase goods to be sold outside of New York state." (Id. ¶ 5). This information led the government to charge Remire with violating the Hobbs Act, which makes it a federal crime to obstruct interstate commerce by robbery. See 18 U.S.C. § 1951.[1]

## I. The Motion to Dismiss Counts One and Two of the Indictment

Remire moves to dismiss the two counts of the indictment that relate to the alleged Hobbs Act violation. The first count charges Remire with attempting a Hobbs Act robbery.[2] The second count charges Remire with violating 18 U.S.C. § 924(c), in that Remire "knowingly" brandished a firearm "during and in relation to and in furtherance of the crime charged in Count One of this indictment." (Ind. ¶ 2).

---

[1] The relevant provisions of the Hobbs Act provide:

> (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.
>
> (b) As used in this section--
>  ....
>  (3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

18 U.S.C. § 1951.

[2] It reads as follows:

> On or about June 24, 2005, in the Southern District of New York, MANNY REMIRE, the defendant, unlawfully, willfully and knowingly did attempt to commit robbery ... and thereby did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, REMIRE attempted to commit a robbery in the Bronx, New York, of an individual who possessed money intended to purchase items for resale outside of New York.

(Ind. ¶ 1).

2

Remire moves to dismiss these counts on the ground that attempting to rob an individual on the street cannot be transmuted into a federal crime on the mere basis that the victim says he planned to use the money he was carrying to buy something that he would later sell out of state. Holding otherwise, according to Remire, would turn "nearly every street robbery" into a federal crime. (Mem. of Law in Supp. of Def. Manny Remire's Motion to Dismiss Counts One and Two of the Indictment ("Remire Mem.") at 1). For example, robbing someone of cash which the victim intended to use to buy a pack of cigarettes would constitute a federal offense, according to Remire, because tobacco is not grown in New York State. (Id. at 4). Similarly, if a New York victim says he intended to use his money to shop in New Jersey, that crime, too, would be federal. (Id.).

The Court, however, is unable to conclude based solely on the indictment and criminal complaint that as a matter of law the government will not be able to prove at trial that the robbery obstructed or affected interstate commerce. Specifically, the motion fails because (1) the indictment sets forth the charges in sufficient detail to meet the minimum requirements established by the United States Court of Appeals for the Second Circuit in United States v. Alfonso, 143 F.3d 772 (2d Cir. 1998); and (2) whether the government established the requisite jurisdictional nexus for a Hobbs Act violation is a fact-based inquiry that can only be resolved after the government has put forth all of its evidence related to jurisdiction.

In Alfonso, the district court had dismissed a Hobbs Act indictment on the same grounds Remire asks this court to rely upon – that the government had not alleged "'sufficient facts to establish a nexus between the robbery allegedly committed ... and any obstruction of interstate commerce.'" Alfonso, 143 F.3d at 773. The Second Circuit reversed, noting that "[w]e have never held that an indictment alleging a violation of the Hobbs Act must specify the precise nature of the effect upon interstate commerce that the government intends to prove at trial." Id.

3

at 776. Rather, all that is required to sustain an indictment is for it to "charge[] a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." Id. (quoting United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992)). During the pretrial conference on this motion, counsel for Remire conceded – appropriately – that the indictment meets these minimal requirements. Moreover, the indictment upheld in Alfonso was less precise than the one at issue here, in that the Alfonso indictment specified only that there was a "robbery at gunpoint" and included no information whatsoever about how that robbery affected interstate commerce. See id. at 774 n.4. In contrast, the indictment here specifies that the victim "possessed money intended to purchase items for resale outside of New York." (Ind. ¶ 1).

The Second Circuit made clear in Alfonso that "[u]nless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial to satisfy the jurisdictional element of the offense, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." Alfonso, 143 F.3d at 776-77. At the pretrial conference, the Court gave the government the opportunity to make such a full proffer of its evidence. As the Second Circuit noted, "in some cases the government may actually favor such a pretrial ruling" because "that would permit an immediate appeal from a ruling adverse to the government." Alfonso, 143 F.3d at 777 n.7. If, on the other hand, the case goes to trial and the Court grants a motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 for failure to satisfy an element of the offense, "the government would have no opportunity to appeal." Id. (citing United States v. Scott, 437 U.S. 82, 91, 98 S. Ct. 2187, 57 L. Ed. 2d 65 (1978)). The government, however, declined the Court's invitation, submitted only that it intends to argue at trial that the victim was not just a private individual but was also a business and specifically

4

stated that it was not making a proffer of all of the evidence it intended to present at trial on this jurisdictional point.

Given the limited information that is before the Court, it is not possible to undertake the detailed factual analysis required to assess whether the government will be able to meet its jurisdictional burden. The Hobbs Act "speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence." Stirone v. United States, 361 U.S. 212, 215, 80 S. Ct. 270, 4 L. Ed. 2d 252 (1960). Accordingly, even though a Hobbs Act prosecution requires "proof that commerce was affected ... since the Federal Government's jurisdiction of this crime rests only on that interference," it is "well established that the burden of proving a nexus to interstate commerce is minimal." United States v. Elias, 285 F.3d 183, 188 (2d Cir.), cert. denied, 537 U.S. 988, 123 S. Ct. 430, 154 L. Ed. 2d 356 (2002) (internal citations and quotation marks omitted). If the defendant's "conduct produces any interference with or effect upon interstate commerce, whether slight, subtle or even potential, it is sufficient to uphold a prosecution under the Hobbs Act." United States v. Perrotta, 313 F.3d 33, 36 (2d Cir. 2002) (quoting Jund v. Town of Hempstead, 941 F.2d 1271, 1285 (2d Cir.1991)).

It is precisely because the government must show only a "slight, subtle or even potential" effect on commerce in order to establish the Hobbs Act nexus that a court requires a complete factual record before ruling on jurisdiction. In United States v. Jamison, for example, a defendant appealed his conviction pursuant to the Hobbs Act for attempting to rob an individual's private residence on jurisdictional grounds. 299 F.3d 114, 115 (2d Cir. 2002), cert. denied, 537 U.S. 1196, 123 S. Ct. 1258, 154 L. Ed. 2d 1033 (2003). The Second Circuit found the requisite jurisdictional nexus and upheld the conviction only after a thorough scouring of the trial record. See id. at 115-21. That record showed that the victim – who was home at the time

5

of the crime – was part-owner of a retail store and also trafficked in cocaine – and that both of these activities, which the Second Circuit considered to be "businesses," dealt in goods that were transported between different states. Id. at 115-17. The Second Circuit noted that at the time of the burglary, the victim was carrying $3,310 and had nearly $18,000 in a safe in the house. Id. at 116. These monies were "commingled ... from all sources" and were to be used "primarily to purchase inventory for both businesses." Id. at 119. It was therefore reasonable for the jury to find that had the robbery succeeded, it would have "substantially diminished" the victim's "inventory purchases of clothing manufactured in Asia, Guatemala, California, Massachusetts, and Maine, and cocaine originating outside the State of New York." Id. The evidence was thus sufficient to establish that the robbery, if completed, would have had "a significant effect on interstate commerce." Id.

Remire attempts to distinguish Jamison by asserting that the Second Circuit in that case treated the crime as the robbery of a business as opposed to that of an individual. It is well established in this circuit that a robbery of a business requires showing only a "minimal" effect on interstate commerce in order for federal jurisdiction to arise, whereas the requisite showing for the robbery of a private citizen has not been determined. See Jamison, 299 F.3d at 120-21. Other circuits, however, have required that the government make a "substantial" showing of an effect on commerce when the victim is an individual because the link to commerce tends to be more attenuated. See United States v. Wang, 222 F.3d 234, 239-40 (6th Cir. 2000) ("when the Government seeks to satisfy the [Hobbs] Act's jurisdictional nexus by showing a connection between an individual victim and a business engaged in interstate commerce, that connection must be a substantial one – not one that is fortuitous or speculative"); United States v. Collins, 40 F.3d 95, 101 (5th Cir. 1994), cert. denied, 514 U.S. 1121, 115 S. Ct. 1986, 131 L. Ed. 2d 873 (1995); United States v. Quigley, 53 F.3d 909, 910-11 (8th Cir. 1995). Even if this Court were to

6

adopt the "substantial showing" standard, however, the appropriate time to undertake the analysis is not at the pretrial stage, but rather only after the government has presented at trial the totality of its evidence related to jurisdiction. In each of the cases cited by Remire, the courts made their jurisdictional rulings in the context of post-conviction motions. See Wang, 222 F.3d at 240; Collins, 40 F.3d at 99; Quigley, 53 F.3d at 909.

Moreover, applying the "substantial showing" standard advocated by Remire and elucidated by the Eighth Circuit in United States v. Quigley would require examining facts not currently before the Court. Quigley stressed that "[c]riminal acts directed towards individuals rather than businesses may violate § 1951(a) only if (1) the acts deplete the assets of an individual who is directly and customarily engaged in interstate commerce, (2) the number of individuals victimized or the sum at stake is so large that there will be some cumulative effect on interstate commerce, or (3) the acts cause or are likely to cause the individual victim to deplete the assets of an entity engaged in interstate commerce." Quigley, 53 F.3d at 910-11. At this stage of the litigation, the Court does not know whether the alleged victim was "directly and customarily engaged in interstate commerce." Accordingly, dismissing the two counts of the indictment pursuant to Rule 12(b) would be premature. See Fed. R. Crim. P. 12(b)(2) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue"); United States v. Bodmer, 342 F. Supp. 2d 176, 180 (S.D.N.Y. 2004) (noting that a Rule 12(b) motion to dismiss is appropriate only "if the trial of the general issue of guilt 'would be of no assistance in determining the validity of the defense'") (quoting United States v. Covington, 395 U.S. 57, 60-61, 89 S. Ct. 1559, 23 L. Ed. 2d 94 (1969)).

7

## II. The Motion for Discovery

Remire also moves for additional discovery pursuant to Fed. R. Crim. P. 16; Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972); and United States v. Agurs, 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976). Specifically, Remire has asked for (1) unredacted copies of discovery documents bearing the names of the victims of the alleged attempted robbery; (2) the names, addresses and phone numbers of the civilian witnesses to the offense; (3) the results of all scientific tests performed on items seized during the arrest; and (4) any statements made by Remire which the government intends to use at trial.

The government has provided Remire with the statements it intends to use at trial and has stated that it does not possess documents related to the request for scientific tests. These aspects of the motion for discovery are therefore moot.

Remire's remaining two requests seek information which would allow defense counsel to interview the victims. The law is clear, however, that the government is not required to "produce the names of any witnesses or a trial witness list this far in advance of trial in the absence of any particularized showing of need by the defense." United States v. Lorenzano, No. S6 03 CR. 1256, 2005 WL 975980, at *4 (S.D.N.Y. Apr. 26, 2005) (citing United States v. Yu, No. 94 Cr. 375, 1994 WL 414352, at *2 (S.D.N.Y. Aug. 8, 1994)); see also United States v. Pastor, 419 F. Supp. 1318, 1330 (S.D.N.Y. 1976) ("The burden is on the defendants to make some particularized showing of need, beyond the obvious assertion that such a list would facilitate preparation for trial."). Moreover, courts in this circuit are especially reluctant to require the disclosure of witness lists in cases such as this one that involve allegations of crimes of violence. See Lorenzano, 2005 WL 975980, at *4; United States v. Robles, No. 04 Cr. 1036, 2005 WL

8

957338, at *1 (S.D.N.Y. Apr. 22, 2005) (noting that disclosure of witness lists is "particularly inappropriate" in cases charging violent crimes).

The only showing of need proffered by Remire is that which is common to criminal defendants: the desire to prove his defense through the government's witnesses. This does not amount to the kind of particularized need that would warrant the discovery requested. See, e.g., United States v. Washington, 947 F. Supp. 87, 89 (S.D.N.Y. 1996) (denying defendant's request for production of witness names even though the alleged crimes were non-violent, the case mainly involved "documentary evidence that is within the Government's control," the alleged offenses were spread over two years and the defendant had "extremely limited funds to devote to his defense"). Accordingly, defendant's motion to disclose the names of the civilian witnesses is denied. At the commencement of trial, the government should disclose the identification of the witnesses and inform them that counsel for Remire seeks to speak with them, although the witnesses are not under a legal obligation to do so.

### III. The Motion for a Bill of Particulars

Remire also seeks a bill of particulars specifying (1) "all relevant facts related to the element of interstate commerce" and (2) which "'items' were intended for purchase or resale outside of New York." This motion is denied because the indictment sufficiently advises Remire of the acts he is accused of committing.

It is well settled that the function of a bill of particulars is to provide sufficient information to enable a defendant to avoid unfair surprise at trial and to preclude a second prosecution for the same offense. See United States v. Torres, 901 F.2d 205, 234 (2d Cir.), cert. denied, 498 U.S. 906, 111 S. Ct. 273, 112 L. Ed. 2d 229 (1990); United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). The function is not to force the government to "disclose the manner in which it will attempt to prove the charges, nor the means by which the crimes charged

9

were committed." United States v. Heredia, No. 02 Cr. 1246, 2003 WL 21524008, at *9 (S.D.N.Y. Jul. 3, 2003); see also United States v. Gottlieb, 493 F.2d 987, 994 (2d Cir. 1974); United States v. Wilson, 565 F. Supp. 1416, 1438-39 (S.D.N.Y. 1983). Therefore, a bill of particulars "should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." Torres, 901 F.2d at 234 (internal citation omitted).

Here, the indictment specifies the time, place and nature of the alleged criminal conduct; it provides Remire with enough information about the specific acts of which he is accused to avoid unfair surprise at trial and double jeopardy in a future litigation. Moreover, the government has produced pursuant to Rule 16 relevant police records from the date of the crime as well as the amended criminal complaint, which further specifies the acts Remire is accused of committing. "Where the Government has provided full discovery, a bill of particulars will rarely be necessary." Robles, 2005 WL 957338, at *1 (citing United States v. Strawberry, 892 F. Supp. 519, 526 (S.D.N.Y. 1995)). Accordingly, the motion for a bill of particulars is denied.

## IV. Conclusion

For the reasons set forth above, defendant's motions to dismiss counts one and two of the indictment, for additional discovery and for a bill of particulars are denied.

Dated: New York, New York
November 30, 2005

Sidney H. Stein, U.S.D.J.